No. 25-3889

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, et al.,

Defendants-Appellants.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

————————————

**REPLY BRIEF FOR APPELLANTS**

————————————

BRETT A. SHUMATE
*Assistant Attorney General*

CRAIG H. MISSAKIAN
*United States Attorney*

DANIEL TENNY
JOSHUA WALDMAN
 (202) 514-0236
 *Attorneys, Appellate Staff*
 *Civil Division, Room 7527*
 *U.S. Department of Justice*
 *950 Pennsylvania Ave., N.W.*
 *Washington, D.C.  20530*

# Table of Contents

Page

INTRODUCTION ..................................................................................1

I.    THE DISTRICT COURT MISCONSTRUED
      THE EXECUTIVE ORDERS ........................................................3

      A.    Executive Order 14,159 Applies Only to the
            Departments of Justice and Homeland Security
            on a Grant-by-Grant Basis .................................................3

            1.    *Textual Arguments.* ...................................................3

            2.    *Bondi Directive.* ..........................................................8

            3.    *Agency Implementation.* ............................................10

            4.    *Social Media, Television Interviews, and Press Releases.* ........16

      B.    Executive Order 14,218 Enforces PRWORA ................................18

II.   PLAINTIFFS' CLAIMS ARE MERITLESS .............................................23

      A.    Separation of Powers. .......................................................23

      B.    Spending Clause. ..............................................................24

            1.    *Unambiguous Conditions.* .........................................24

            2.    *Sufficient "Nexus."* ....................................................27

# Table of Contents (cont'd)

Page

C.    Tenth Amendment. .............................................................28

D.    Fifth Amendment. .............................................................29

    1.    *Vagueness.*....................................................................29

    2.    *Procedural Due Process.* ............................................31

E.    Administrative Procedure Act. .......................................32

    1.    *Final Agency Action.* ..................................................32

    2.    *Reasonable Explanation.* ............................................33

III.    PLAINTIFFS CANNOT SHOW IRREPARABLE HARM ...................34

IV.    THE INJUNCTION IS IMPRECISE AND OVERBROAD ...................35

CONCLUSION .......................................................................40

CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Building & Construction Trades Department v. Allbaugh,*
    295 F.3d 28 (D.C. Cir. 2002) ........................................................7

*City & County of San Francisco v. Trump,*
    897 F.3d 1225 (9th Cir. 2018)................................................. 5, 17

*Department of Education v. California,*
    145 S. Ct. 966 (2025) ....................................................................34

*Lebron v. National R.R. Passenger Corp.,*
    513 U.S. 374 (1995) ............................................................. 23, 26

*Metropolitan Omaha Property Owners Ass'n v. City of Omaha,*
    991 F.3d 880 (8th Cir. 2021)........................................................31

*National Endowment for the Arts v. Finley,*
    524 U.S. 569 (1998) ....................................................................30

*National Federation of Independent Business v. Sebelius,*
    567 U.S. 519 (2012) ....................................................................36

*New York v. U.S. Dep't of Justice,*
    951 F.3d 84 (2d Cir. 2020)...........................................................7

*Trump v. CASA, Inc.,*
    145 S. Ct. 2540 (2025) ................................................................35

## TABLE OF AUTHORITIES (cont'd)

<u>Page(s)</u>

**<u>Cases</u>**

*United States v. Blackstone,*
    903 F.3d 1020 (9th Cir. 2018)....................................................22

*United States v. Makowski,*
    120 F.3d 1078 (9th Cir. 1997)....................................................30

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) ................................................................30

*Yee v. City of Escondido,*
    503 U.S. 519 (1992) ........................................................... 23, 26

**<u>Statutes</u>**

8 U.S.C. § 1373.............................................................................26

8 U.S.C. § 1601.............................................................................27

8 U.S.C. § 1601(6) .................................................................. 19, 20

8 U.S.C. § 1611(a) ........................................................................19

8 U.S.C. § 1611(c)(1)(B) ...............................................................20

Personal Responsibility and Work Opportunity
    Reconciliation Act of 1996 (PRWORA), 8 U.S.C. § 1601 *et seq.* ............18

## TABLE OF AUTHORITIES (cont'd)

Page(s)

**Other Authorities**

Executive Order 14,159................................................ 1, 3, 5, 15, 21, 23, 27, 28, 34

Executive Order 14,218....................................................1, 4, 18, 22-23, 25-28, 38

U.S. DHS, *DHS Standard Terms and Conditions*,
    dhs.gov/publication/dhs-standard-terms-and-conditions
    (last visited September 19, 2025)...............................................14

**Rules**

Fed. R. Civ. P. 65(d)(1)(B)-(C)................................................................37

**Regulations**

2 C.F.R. § 200.340(c) .............................................................32

2 C.F.R. § 200.342................................................................32

- v -

## INTRODUCTION

Like the district court, Plaintiffs misunderstand the meaning of the Executive Orders at issue. Contrary to their insistence, the Orders do not impose a categorical ban on all federal funding for sanctuary jurisdictions. Section 17 of Executive Order 14,159 calls for an evaluation of programs on a grant-by-grant basis to determine if a sanctuary jurisdiction condition would be lawful and appropriate. Section 2(a)(ii) of Executive Order 14,218 does not address federal funding to States and localities at all; it merely enforces existing federal law that restricts federal public benefits for aliens not lawfully admitted to the United States. The text of the Orders, as well as agencies' pre-injunction implementation, makes this clear. Plaintiffs' reliance on social media posts, television interviews, and press releases that do not even purport to implement the Executive Orders cannot override the plain meaning of the text and those sources do not provide a sound basis for the district court's injunction.

Because the district court's holding on the merits is based on its erroneous understanding of the Executive Orders, Plaintiffs are not likely

to succeed on the merits.  Nor, in the absence of a categorical ban, can Plaintiffs show irreparable harm, and they disregard the harm to the Government if it is forced to disburse grants that it cannot later recover.

The district court's injunction should also be vacated as overbroad and imprecise.  The district court extended the injunction to non-parties (the Departments of Transportation, and Housing and Urban Development), and to "any … Government action," ER-14, even such actions are not based on the Executive Orders or Bondi Directive challenged in Plaintiffs' complaint and in their motion for a preliminary injunction and are not undertaken by the named Defendants in this litigation.  The injunction applies an unknowable and imprecise standard, applying to actions that employ "the kind of coercion" or "same coercive threat," ER-14, as the Orders supposedly do.  And while the district court professed otherwise, Plaintiffs do not dispute that the plain text of the injunction covers even individual grant-by-grant determinations, which

2

goes well beyond even the district court's flawed rationale. At minimum, that abuse of discretion should be reversed.

## I.   THE DISTRICT COURT MISCONSTRUED THE EXECUTIVE ORDERS

### A.   Executive Order 14,159 Applies Only to the Departments of Justice and Homeland Security on a Grant-by-Grant Basis

Executive Order 14,159 requires the Departments of Justice and Homeland Security to "evaluate" their own programs on a grant-by-grant basis, "undertak[ing] any lawful actions," and "employ[ing] all lawful means," in determining which programs can and should be subject to a sanctuary jurisdiction condition. ER-96, ER-99. Plaintiffs' efforts to advance an atextual reading that requires an automatic, across-the-board restriction on federal funding are meritless.

#### 1.   *Textual Arguments.*

Plaintiffs' arguments are divorced from the text of the Order. They repeatedly assert that Executive Order 14,159 applies categorically to all federal funding, but Section 17 of the Order does not use the word "all," "categorical" or any similar words to modify "Federal funds." Nor does

3

the Order apply across the Executive Branch; by its terms it applies only to the Attorney General and Secretary of Homeland Security, in contrast to Executive Order 14,218 which applies to "the head of each executive department or agency."  ER-94.

Plaintiffs' assertion that the Order categorically withholds funding reads the word "evaluate" out of the Order entirely.  Pls. Br. 21-22.  If the Order were categorical, as Plaintiffs contend, there would be nothing at all for the Departments to "evaluate."  To the contrary, the Departments are required under the Order to "evaluate," among other things, whether a particular funding condition would be "possible under law," and would constitute a "lawful action[]," ER-99.  Only after such an evaluation should the Departments "undertake any … actions" to restrict the identified federal funds.  ER-99.  Thus, Plaintiffs argument that the Order "could … instruct Executive departments … to narrowly apply [its] directive," Pls. Br. 23, overlooks the fact that the text of the Order does precisely that.

4

Moreover, as discussed below, the affected agencies also implemented the Order in that narrow manner.

Plaintiffs acknowledge (Pls. Br. 22-23) that in *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018), this Court held that because the prior 2017 Executive Order specifically excluded law-enforcement grants, it implied that the Order was otherwise broad and categorically reached all other federal funding. *See* US Br. 34-35. But Plaintiffs assert that Executive Order 14,159 remains categorical even without such a specific exclusion for law-enforcement grants. On Plaintiffs' view, it is "heads I win, tails you lose." If the Order has a specific exclusion for certain grants, then it implies the Order is otherwise categorical; if the Order has no such exclusion, it nonetheless remains categorical. Rather than reading *San Francisco* to establish an implausible *per se* rule that Executive Orders should be read to be categorical and comprehensive regardless of their language, the Court should recognize

5

that this Court's analysis in *San Francisco* was tailored to the particular

circumstances of that Executive Order, which are absent here.

Plaintiffs also assert (Pls. Br. 22) that the Order's reference to "the

maximum extent possible under law," ER-99, proves that the Order is

categorical in nature.  In fact, the opposite is true:  the relevant phrase

*narrows* the Order's meaning by cabining its funding restrictions to those

that are consistent with the law, rather than imposing a categorical rule

withholding federal funds whether authorized by law or not.  The same is

true for the Order's directive to "undertake any *lawful actions*" with respect

to sanctuary jurisdictions, ER-99 (emphasis added), which also narrows the

permissible actions under the Order, and the Order's instructions that its

terms "shall be implemented consistent with applicable law," ER-100.

Contrary to Plaintiffs' suggestion (Pls. Br. 35), Defendants do not

argue that the Order "avoid[s] judicial review" because of the savings

clauses or that they render judicial review "meaningless."  The effect of the

savings clauses is not to *insulate* the Order from judicial review, but to

6

narrow the meaning and scope of the Order when it is *subject* to judicial review in a facial challenge like this one.

As explained in *Building & Construction Trades Department v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002), if an Executive Order has such a savings clause, and the Order can be carried out in a lawful way, then courts should not enjoin the Order based on the possibility that it might be implemented in an unlawful manner. That is exactly the case here: Plaintiffs (Pls. Br. 16-17, 20, 32, 56) and the district court (ER-12, ER-16) both acknowledge that immigration-related conditions may lawfully be placed on specific Federal funds if there is a sufficient nexus between the funding programs and the immigration-related condition, and where permitted by statute. And other courts have upheld immigration related grant conditions in such contexts. *E.g.*, *New York v. U.S. Dep't of Justice*, 951 F.3d 84 (2d Cir. 2020); *see* ER-146 (Bondi Directive citing *New York*).

As noted in the Government's opening brief (at 31-32), the Federal Emergency Management Agency (FEMA) conducted precisely the sort of

7

evaluation contemplated by the Executive Order's text—it identified 12 specific programs for sanctuary jurisdiction conditions and their statutory nexus to immigration. *See infra* at 12. Despite the availability of permissible paths to implementing the Order, the savings clauses that limit the Departments of Justice and Homeland Security to lawful implementation of the Order, and evidence that the agencies are following the Order according to its terms, the district court nonetheless enjoined the Executive Order entirely, including the implementation of FEMA's program-specific determinations. *See* ER-4-6. That was error.

      2.   *Bondi Directive.*

As noted in the Government's opening brief (at 27-28), the Bondi Directive confirms the Executive Order's narrow scope: The Directive applies only to "Federal funds *from the Department* [*of Justice*]"; must be implemented "consistent with law" and "[c]onsistent with applicable statutes, regulations, court orders, and terms"; and requires a "report" to determine "the grants to which [the sanctuary jurisdiction] requirement

8

applies," thus making clear that it is not the entire universe.  ER-146-147 (emphasis added).  Plaintiffs respond that some of the Directive's preamble suggests a broader understanding, and that they "did not challenge [the other] portion[s] of the Bondi Directive."  Pls. Br. 31-32.  But the district court did not just enjoin the preamble of the Bondi Directive; it enjoined the preamble *and* the entirety of Section I.  ER-2, ER-11, ER-83-84.  More importantly, the entire Directive must be construed as a whole; isolated words from the preamble should not be read out of their context to imbue the Order with an erroneously broad meaning that is at odds with the text of the Executive Order and the Bondi Directive as a whole.

Plaintiffs also argue that the Bondi Directive's narrower understanding of the Order "should be rejected" because it is addressed only to the Department of Justice rather than "the Executive Branch generally."  Pls. Br. 31.  This makes little sense.  Of course, the Bondi Directive is addressed to the Department of Justice alone, and not the entire Executive Branch:  the Attorney General oversees the Department of

9

Justice, not the entire Executive Branch, and the Executive Order is directed

only to the Departments of Justice and Homeland Security.  (Homeland

Security Secretary Noem issued her own Directive implementing the Order

for DHS funding.  ER-144-145.)  Plaintiffs offer no rational reason to reject a

directive from the Attorney General, addressed to employees within her

Department, and which is consistent with the language of an Executive

Order directed to the Department.

> 3.   *Agency Implementation.*

a.   <u>Department of Justice</u>.  Prior to the district court's injunction,

the Department of Justice had not frozen any federal funds or withheld any

grants pursuant to the Executive Order.  ER-80; *see* US Br. 29-30.  That alone

confirms that the Executive Order and Bondi Directive are not, and were

not taken by the Department to be, an instruction to categorically (and

immediately) impose a sanctuary jurisdiction condition on every grant and

withhold all federal funding.  Plaintiffs do not deny any of this, nor do they

point to a single instance of the Department withholding federal funds

10

under the Order.  Indeed, Plaintiffs' answering brief is noticeably devoid of any discussion of how the Department of Justice has (and has not) implemented the Order and Bondi Directive.  *See* Pls. Br. 28-34.

Plaintiffs argue that the Department may not have implemented the Order and Bondi Directive because Plaintiffs filed suit two days after the Directive was issued.  Pls. Br. 50.  But the filing of a complaint did not preclude the Department from implementing the Order and Directive, since the preliminary injunction was not issued for another 11 weeks.  *See* US Br. 75.  The Department's approach during the intervening time is attributable to the fact that the Order and the Directive both contemplated a program-by-program evaluation and review, rather than the wholesale, indiscriminate, and immediate withholding of funds that Plaintiffs insist upon.

b.     <u>Department of Homeland Security</u>.  Contrary to Plaintiffs' argument that the Order compels a categorical approach, DHS implemented the Executive Order by requiring a grant-by-grant

11

evaluation.  The Secretary directed "[a]ll components … to review" the Department's funding and "provide a report" recommending whether funding restrictions should apply and underscored that any conditions must be "consistent with relevant legal authorities."  ER-144-145.  FEMA implemented those instructions by recommending 12 specific programs for sanctuary jurisdiction conditions —but FEMA also identified dozens more programs where such conditions should not apply and recommended a blanket exemption for disaster grants, non-disaster mitigation grants, and grants to fire departments and organizations that comprise the National Urban Search and Rescue Response System.  ER-111, ER-114-118; *see* US Br. 32.  Plaintiffs' claim that "FEMA's recommendations … are anything but targeted," Pls. Br. 29, thus cannot be squared with the record.

Plaintiffs contend that the 12 programs identified by FEMA lack a sufficient nexus to immigration.  Pls. Br. 30.  That misses the point, which is that FEMA conducted a particularized analysis, not that FEMA necessarily made every judgment correctly.  To the extent that Plaintiffs

12

have standing to do so and the other prerequisites for a cause of action are met, they can file a new lawsuit challenging any determination by FEMA that a particular program should be subject to a sanctuary jurisdiction condition.  The relevant point here is that FEMA undertook efforts to make grant-by-grant determinations in the first place, which undermines Plaintiffs' argument that the Executive Order compelled the agency to adopt a categorical approach.  In any event, Plaintiffs are wrong on the merits.  FEMA identified programs that fund "local governments for the purpose of border protection and border security," "services to aliens in immigration removal proceedings," or activities related to "aliens following their release from DHS."  ER-130-132.

Plaintiffs contend that DHS "overrode" FEMA's grant-by-grant recommendations by issuing DHS Standard Terms and Conditions for Fiscal Year 2025 which, they assert, apply to "all new federal awards."  Pls. Br. 30.  But Plaintiffs omit a critical part of the sentence:  the Standard Terms apply to "all new federal awards … *unless a term or condition*

13

*specifically indicates otherwise*," ER-133 (emphasis added), demonstrating

that even those Standard Terms do not apply categorically across-the-

board, but on a program-by-program basis.  DHS's website (which was

linked to, and incorporated by reference in, the Standard Terms, *see* ER-

133) further states that "[n]ot all of DHS's Standard Terms and Conditions

apply to every DHS grant program[]."  *See* U.S. DHS, *DHS Standard Terms

and Conditions*, https://www.dhs.gov/publication/dhs-standard-terms-and-

conditions (last visited September 19, 2025); US Br. 60 n.8.  Contrary to

Plaintiffs' contention, Pls. Br. 31, DHS's website ("[n]ot all …. Conditions

apply") is consistent with its Standard Terms ("unless a term or condition

specifically indicates otherwise").  Plaintiffs urge this Court to "reject[]" the

guidance on DHS's website because its language was issued after the

district court's injunction, Pls. Br. 31, while simultaneously asking this

Court to interpret the Executive Order in light of other documents issued

after the injunction, *see* Pls. Br. 6, 7, 11 n.8, 33, 41 (citing Plaintiffs' Request

for Judicial Notice Exs. C, F, J, Aug. 18, 2025).  And in any event, to the

14

extent that Plaintiffs urge that DHS has applied conditions in some

inappropriate setting, no such concrete issue is before this Court now in the

context of this facial challenge.

      c.    <u>Department of Transportation</u>.  Plaintiffs contend that

Executive Order 14,159 must apply beyond the Departments of Justice and

Homeland Security because the Department of Transportation (DOT)

supposedly "invoked" the Order, Pls. Br. 9, to impose funding conditions

"pursuant to" the Order, Pls. Br. 29.  That is incorrect.  The Letter from the

Secretary of Transportation, on which Plaintiffs rely (Pls. Br. 29), does not

invoke or refer to Executive Order 14,159.  1-SER-68-71.  And while DOT's

specific grant conditions invoke *other* Executive Orders, *see* 1-SER-84, 1-

SER-88, 1-SER-97, 1-SER-101, 1-SER-105, 1-SER-108, Executive Order 14,159

is conspicuously absent.  Though Executive Order 14,159 by its terms is

limited to the Departments of Justice and Homeland Security, the limited

scope of the Order does not preclude DOT from adopting its own

conditions for grants it awards that are similar to those contemplated by

15

the Executive Order, and nothing in DOT's independent choice to do so would alter the meaning and scope of the Executive Order, much less give rise to a basis for enjoining it.

Even if DOT were implementing the Order, its implementation is not categorical in the way Plaintiffs contend.  As with DHS's Standard Terms, Plaintiffs point to DOT's Standard Terms, Pls. Br. 29, but overlook portions stating that "not every provision of this Master Agreement will apply to every Recipient or Underlying Agreement," 1-SER-76, or that certain grant agreements are a "template only," 1-SER-90.

4.  *Social Media, Television Interviews, and Press Releases.*

Finally, Plaintiffs insist that the Order applies "categorically" to "all" federal funding, Pls. Br. 2, 20, relying principally on statements culled from social media, television interviews, and press releases —not the text of the Order itself.  *See* Pls. Br. 2, 5-7, 19, 27-28, 36 n.21.  This Court previously made clear that "the interpretation of an Executive Order begins with its text," and that "the Administration's statements cannot alter the plain

16

meaning of the Executive Order," *San Francisco*, 897 F.3d at 1238, 1243 —

and that principle cuts both ways.  Nothing in the cases Plaintiffs rely on

(Pls. Br. 28) supports construing the Order by reference to such sources.

To make matters worse, Plaintiffs indiscriminately cite a wide range

of statements on the same general topic of sanctuary jurisdictions without

even attempting to show that the statements refer to the Executive Orders

at issue in this case rather than other actions or proposed policies.  For

example, Plaintiffs cite a social media post from April 10, 2025, in which the

President stated that he was "[w]orking on papers to withhold all Federal

Funding."  Pls. Br. 5; *see* ER-26.  By its terms, the post suggests that it refers

to a forthcoming Executive Order or other Presidential action, and not to

the Executive Orders at issue here (which had already been issued at that

time).  Plaintiffs also rely on a statement that sanctuary jurisdictions "will

be sued," Pls. Br. 6, which does not appear to refer to the Executive Orders

at issue in this litigation, but to affirmative litigation to be filed by the

17

Government – litigation not contemplated by these Executive Orders and which the district court exempted from its injunction, ER-12.

     B.    <u>Executive Order 14,218 Enforces PRWORA</u>

The district court also misunderstood the other Executive Order. Section 2(a)(ii) of Executive Order 14,218 does not apply to federal funding to States and localities at all but instead restricts the provision of federal public benefits to individuals who are unlawfully present in the United States pursuant to longstanding statutory requirements in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), 8 U.S.C. § 1601 *et seq.*

Section 1 of the Order makes it clear that the "purpose" of the Order is to "uphold" the "plain text" of PRWORA, which "generally prohibits illegal aliens from obtaining most taxpayer-funded benefits." ER-94. Section 2(a) of the Order, entitled "Preserving Federal Public Benefits," likewise calls for agencies "[t]o prevent taxpayer resources from acting as a magnet and fueling illegal immigration to the United States" and "ensure

18

… that no taxpayer-funded benefits go to unqualified aliens."  ER-94.

Section 2(a) thus echoes PRWORA's stated goal of "remov[ing] the

incentive for illegal immigration provided by the availability of public

benefits," 8 U.S.C. § 1601(6), and employs terms such as "qualified alien"

and "Federal public benefit" taken directly from PRWORA, 8 U.S.C.

§ 1611(a).  Section 2(a)(i) directs agencies to "align [federally funded]

programs with … the requirements of applicable Federal law, including the

PRWORA."  ER-94.  And Section 2(a)(iii) directs agencies "to ensure that

taxpayer-funded benefits exclude any ineligible alien who entered the

United States illegally or is otherwise unlawfully present in the United

States," ER-94, again aligning with PRWORA's restrictions.

Plaintiffs do not dispute any of this and concede that Sections 2(a)(i)

and 2(a)(iii) of the Order "do address limiting the provision of benefits to

undocumented immigrants" and thus implement the provisions in

PRWORA.  Plaintiffs implausibly contend, however, that Section 2(a)(ii) —

the provision enjoined by the district court —is uniquely disconnected

19

from that statute. Pls. Br. 25. But Section 2(a)(ii) also implements
PRWORA by "ensur[ing] … that Federal payments … do not … facilitate
the subsidization or promotion of illegal immigration," ER-94, again
echoing PRWORA's goal of "remov[ing] the incentive for illegal
immigration provided by the availability of public benefits," 8 U.S.C.
§ 1601(6). And Section 2(a)(ii)'s use of the term "Federal payments," ER-94,
borrows from PRWORA, which refers to "payments" "by an agency of the
United States or by appropriated funds of the United States," 8 U.S.C.
§ 1611(c)(1)(B); *see* US Br. 42. Plaintiffs argue that "payments" can mean
other things in other contexts, Pls. Br. 25-26, but the phrase "Federal
payments" in *this* context clearly refers to federal public benefits restricted
by PRWORA. Plaintiffs provide no justification for construing Section
2(a)(ii) to have a unique meaning divorced from its surrounding
provisions.

Contrary to Plaintiffs' assertion, Section 2(a)(ii) does not "require[]
that federal funding be denied to [sanctuary] jurisdictions." Pls. Br. 25. On

20

that view, Section 2(a)(ii) would be indistinguishable from how Plaintiffs

read Executive Order 14,159.  Plaintiffs rely (Pls. Br. 24; *see also* Pls. Br. 33)

on the language in Section 2(a)(ii) directing agencies to ensure that Federal

payments "do not, by design or effect, facilitate the subsidization or

promotion of illegal immigration, or abet so-called 'sanctuary' policies that

seek to shield illegal aliens from deportation."  ER-94.  But enforcing

PRWORA's restrictions *is the means by which* federal agencies accomplish

those goals.  The relevant part of Section 2(a)(ii) does not contain a separate

free-standing requirement to freeze grant money; it is a description of the

Administration's view of what agencies will accomplish by enforcing

PRWORA's requirements with respect to federal public benefits.  For the

same reasons, Plaintiffs miss the mark in argument that "[n]othing in

PRWORA addresses civil immigration enforcement or requires that local

officials assist with federal efforts to detain or deport undocumented

immigrants."  Pls. Br. 24.  Nothing in Section 2(a)(ii) requires that either;

that Section simply directs agencies to enforce the restrictions that *do* exist

21

in PRWORA and describes what the expected effect of that enforcement will be.[1]

Plaintiffs' waiver argument is also misplaced.  Pls. Br. 24.  Defendants "consistently argued" that Executive Order 14,218 directs action consistent with federal law, and though the argument "might have been expressed differently," that "does not alter the fact that the Government has argued throughout" that the Order is lawful.  *United States v. Blackstone*, 903 F.3d 1020, 1025 n.2 (9th Cir. 2018).  Because Defendants' view that the Order is lawful was "properly presented" in the district court, Defendants "can make any argument in support of that" view and "are not limited to the precise arguments they made below."  *Yee v. City of Escondido*, 503 U.S. 519,

---

[1] The same is true for Plaintiffs' assertion that HUD's implementation of Executive Order 14,218 is "distinct from enforcing PRWORA."  Pls. Br. 33; *see id.* at 42.  The Secretary's letter (ER-109) and the HUD Continuum of Care Grant Agreement (ER-108) both expressly invoke restrictions on federal public benefits set forth in PRWORA.  While those documents also cite the language in Section 2(a)(ii), for the reasons explained above that language simply describes the effects that follow from enforcing PRWORA; it does not impose a separate funding restriction.

22

534 (1992); *see Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995).

## II.     PLAINTIFFS' CLAIMS ARE MERITLESS

Plaintiffs' arguments on the merits all turn on their mistaken position that Executive Order 14,159 and the Bondi Directive require the categorical government-wide withholding of all federal funding from sanctuary jurisdictions and that Section 2(a)(ii) of Executive Order 14,218 is unrelated to the enforcement of PRWORA.  Plaintiffs are not likely to succeed on the merits because all their arguments are predicated on that erroneous premise.

### A.     Separation of Powers.

Plaintiffs contend that any funding conditions imposed pursuant to Executive Order 14,159 cannot be authorized by statute because the Order "failed to provide any statutory authority."  Pls. Br. 39.  As noted above, however, the Order requires the Departments of Justice and Homeland Security to "evaluate" their own programs on a grant-by-grant basis, to determine, among other things, whether a sanctuary jurisdiction

23

requirement would be a "lawful action[]" and "possible under law." ER-99; *see* ER-96 ("employ[ing] all lawful means"); ER-100 ("consistent with applicable law"). That the Order did not supply the relevant statutory authority does not make it "deficient," Pls. Br. 39, but only further underscores that the Order left it to the Departments to determine, on a grant-by-grant basis, whether a sanctuary jurisdiction condition should apply and, if so, what the relevant statutory basis would be. And, as noted above, that is what the agencies had been doing until the district court entered its injunction. So long as statutory authority for the funding condition exists, Separation of Powers does not require that it be identified in advance at the Executive Order level rather than by individual Departments or agencies implementing those conditions while carrying out the Order's instructions.

B.    Spending Clause.

1.    *Unambiguous Conditions.*

Plaintiffs contend that they could not have knowingly made the choice to accept a funding condition, as the Spending Clause requires, if

24

that condition is retroactively imposed on funds that were already awarded. Pls. Br. 40. But all funding conditions by their terms operate prospectively only, and neither Plaintiffs nor the district court identified anything in the Executive Orders requiring retroactive application, or even any instances of agencies imposing conditions retroactively. US Br. 74-75.

Plaintiffs object that HUD grant conditions are retroactive, Pls. Br. 41, but that is incorrect. As noted above, *supra* note 1; *see* US Br. 45-46, 54, HUD's grant conditions simply enforce the pre-existing restrictions in PRWORA. Those conditions are thus no more ambiguous than the statute itself, yet Plaintiffs point to no authority suggesting PRWORA's restrictions violate the Spending Clause. Nor could restrictions that have existed for decades operate retroactively on funds granted today, and Plaintiffs cannot credibly claim surprise from their enforcement. US Br. 74 n.13.

Plaintiffs' other objections (Pls. Br. 41) are similarly misplaced. The term "Federal payments" in Executive Order 14,218 is borrowed from PRWORA and plainly refers to federal public benefits. *See supra* at 20; US

25

Br. 42.  That term too is thus no more ambiguous than the statute itself.

Executive Order 14,218's reference to "abet[ting] so-called 'sanctuary'

policies" "by design or effect" is simply a description of what federal

agencies accomplish by enforcing PRWORA's restrictions (not a separate

unrelated funding condition).  *See supra* at 21.  And while Executive Order

14,159 does not define what constitutes a sanctuary jurisdiction, the Bondi

and Noem Directives do, by specifying that it includes jurisdictions that

refuse to comply with 8 U.S.C. § 1373.  ER-144-145, ER-147; *see* US Br. 66.

Here too, Plaintiffs' suggestion of waiver (Pls. Br. 42) is meritless.

Defendants consistently argued that the Executive Orders and Bondi

Directive are lawful and are not limited to the precise way it presented its

argument below.  *Yee*, 503 U.S. at 534; *see supra* at 22.  Even if Defendants

had made no such argument, a claim is preserved if a party presents it *or*

the court below passes upon it, *Lebron*, 513 U.S. at 379, and the district court

plainly reached whether grant conditions are sufficiently clear to satisfy the

Spending Clause, ER-67-68.

26

2.    *Sufficient "Nexus."*

PRWORA declares a "national policy with respect to welfare and

immigration."  8 U.S.C. § 1601.  Because Executive Order 14,218, and any

agency grant conditions implementing that Order, merely enforce

PRWORA's restrictions, they would satisfy any nexus requirement under

the Spending Clause.  Plaintiffs do not dispute PRWORA's close

connection to immigration but instead repeat their contention that

Executive Order 14,218 does not implement PRWORA, Pls. Br. 43, which is

incorrect for the reasons previously explained.  *See supra* at 18-22.  They

likewise rely (Pls. Br. 43) on the same waiver argument that is wrong for

reasons explained above.  *See supra* at 22-23, 26.

Plaintiffs contend that FEMA's 12 program-specific

recommendations for grant restrictions pursuant to Executive Order 14,159

and the Noem Directive lack a sufficient nexus to immigration.  That is

incorrect.  *See* ER-130-132 (noting programs that fund "local governments

for the purpose of border protection and border security," "services to

27

aliens in immigration removal proceedings," or activities related to "aliens following their release from DHS"); *see supra* at 13.  Regardless, even if some individual grant decisions lacked a sufficient nexus, that would not be a basis for enjoining the Executive Order as a whole, on its face, and this case does not involve any challenge to discrete individual grant decisions (which would in any event likely not be ripe at this juncture).

> C.    Tenth Amendment.

Plaintiffs' Tenth Amendment argument repeats and relies upon their incorrect premise that Executive Order 14,159 categorically withholds all federal funding from sanctuary jurisdictions and that Executive Order 14,218 does not implement PRWORA.  Those arguments are wrong for reasons previously explained.  *Supra* at 3-22.

Plaintiffs suggest that even if Executive Order 14,218 merely implements PRWORA's restrictions on federal public benefits, it would nonetheless be a "coercive gun to the head" where those benefits are used "to provide safety-net services."  Pls. Br. 45.  Plaintiffs' argument would

effectively mean that PRWORA itself (and not just the Executive Order) is unconstitutional because it is unduly coercive, but in the 30 years in which those restrictions have applied, no court (including the district court here) has ever endorsed that view.

     D.    <u>Fifth Amendment</u>.

        1.    *Vagueness.*

Plaintiffs argue that they are "squarely in the crosshairs" of the Executive Orders, Pls. Br. 12, but also that it is "impossible to determine" whether the Orders apply to them, Pls. Br. 48. Both cannot be true. They acknowledge that the Bondi and Noem Directives define what qualifies as a sanctuary jurisdiction, ER-144-145, ER-147, but argue that it does not spell out every way a jurisdiction might qualify, Pls. Br. 47. But not every conceivable gap in agency directives amounts to unconstitutional vagueness. That is particularly true in the present context of grant funding. To begin with, as Plaintiffs acknowledge, Pls. Br. 48-49; *see infra* at 31, they have no due process property interest in future grant awards, and thus there is no basis for applying Fifth Amendment vagueness standards.

29

Even if those standards did apply, "[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). "In the context of selective subsidies, it is not always feasible for Congress to legislate with clarity." *National Endowment for the Arts v. Finley*, 524 U.S. 569, 589 (1998). Even where the terms of a grant condition are "opaque," "the consequences of imprecision are not constitutionally severe" in the context of grant awards, and accepting Plaintiffs' vagueness argument "would be to call into question the constitutionality of … countless other[]" grant conditions with "subjective criteria." *Id.* In addition, "a scienter requirement may mitigate a law's vagueness," *Village of Hoffman Estates*, 455 U.S. at 499, especially "the 'willful' scienter requirement," *United States v. Makowski*, 120 F.3d 1078, 1081 (9th Cir. 1997), which mitigates Plaintiffs' specific complaint (Pls. Br. 47) about what it means to "willfully fail to

30

comply with other applicable federal immigration laws," ER-147.  *See also*

*Metropolitan Omaha Property Owners Ass'n v. City of Omaha*, 991 F.3d 880,

887 (8th Cir. 2021) (declining to find Ordinance's reference to other

"applicable laws" unconstitutionally vague).

> 2.    *Procedural Due Process.*

Plaintiffs effectively concede that they have no due process property

interest in future grant awards.  Pls. Br. 48-49.  They argue only that they

have a property right where the Executive Order operates retroactively to

funds previously awarded.  Pls. Br. 49.  While insisting that the Orders

"have been applied retroactively," *id.*, the record does not support that

claim.  Even the district court acknowledged that Plaintiffs "have not yet

suffered a loss of funds or other enforcement action under the 2025

Executive Orders," ER-50, and Plaintiffs cannot point to any instance of a

retroactive freezing of funds or withdrawal of grant money.  And if

Defendants had terminated any awards to Plaintiffs before the end of the

performance period, the relevant agency would need to provide notice and

31

an opportunity to object, 2 C.F.R. §§ 200.340(c), 200.342, which would have

obviated any due process concerns.

      E.     <u>Administrative Procedure Act</u>.

          1.    *Final Agency Action.*

Plaintiffs agree that the Bondi Directive's requirement to review

future grants and report on whether a sanctuary jurisdiction should apply

to them is not final agency action under the APA.  Pls. Br. 49.  They argue

instead that a decision to retroactively freeze the distribution of funds

already awarded would be final agency action.  Pls. Br. 49-50.  But no such

decision exists.  As noted above, *supra* at 31, Plaintiffs "have not yet

suffered a loss of funds or other enforcement action under the 2025

Executive Orders," ER-50, and Plaintiffs do not identify any actual freezing

of funds by the Department of Justice.  Plaintiffs contend that the

Department did not do so because Plaintiffs filed their complaint two days

after the Bondi Directive was issued.  Pls. Br. 50.  But the *reason* for the lack

of final agency action is immaterial; the only salient (and uncontested) fact

is that the Department has yet to take any action pursuant to the Bondi Directive, which means that there is no final agency action under the APA.

2.    *Reasonable Explanation.*

As explained in Defendants' opening brief, even if the Bondi Directive were subject to APA review, it is not arbitrary or capricious.  It reasonably explained the basis for withholding funding for sanctuary jurisdictions, noting that illegal immigration is an unacceptable threat to our national security and public safety, and that the Department of Justice may reasonably confine its discretionary grant awards to jurisdiction that support, rather than frustrate, the Department's law enforcement interests with respect to immigration.  Plaintiffs do not seriously contend that this view is arbitrary but argue only that it was not "the product of the agency's own decisionmaking."  Pls. Br. 51.  But Plaintiffs offer no support whatsoever for the novel proposition that an agency acts arbitrarily when following the Administration's priorities as set forth by the President in an Executive Order.

## III.   PLAINTIFFS CANNOT SHOW IRREPARABLE HARM

Plaintiffs' claim of irreparable harm relies principally on their erroneous claim that Executive Order 14,159 categorically withholds all federal funding.  It does not, and once that error is corrected, Plaintiffs' claim of irreparable budgetary harm is vastly overstated.  Plaintiffs cannot demonstrate any irreparable harm at all from Executive Order 14,218; that Order merely enforces PRWORA, and there can be no irreparable harm from the enforcement of federal law that has existed for decades and whose lawfulness has not previously been doubted.

Nor do Plaintiffs dispute that the government "is unlikely to recover the grant funds once they are disbursed," thus causing irreparable harm to Defendants.  *Department of Education v. California*, 145 S. Ct. 966, 969 (2025). The district court thus abused its discretion in finding that the balance of equities weighs in favor of an injunction.

34

## IV.   THE INJUNCTION IS IMPRECISE AND OVERBROAD

If nothing else, the district court's injunction should be vacated as overbroad.  The injunction may be limited to the named *Plaintiffs*, Pls. Br. 58, but it applies to non-party *Defendants*, including HUD and DOT, who are not named in the complaint, ER-154.  (Nor have Plaintiffs named those agencies as parties in their second amended complaint.  D. Ct. Dkt. 193.)  That alone is improper.  *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2551 (2025) ("As a general rule, an injunction could not bind one who was not a party to the cause.").  And although Plaintiffs only sought an injunction prohibiting actions based on the Executive Orders and Bondi Directive, Pls. Br. 14; ER-235, 2-SER-383, the district court extended its injunction to broadly include "any … Government action," ER-14.  Thus, it enjoined DOT grant conditions, ER-6-8, ER-10, even though they were not implemented pursuant to either Executive Order.  *See supra* at 15-16.

The injunction is also imprecise.  It enjoins any government action with "the kind of coercion" or "the same coercive threat" as the Executive

35

Orders, ER-14, but that unclear and unknowable standard leaves

Defendants to guess at what qualifies.  Indeed, while "coercion" in this

context is typically determined by whether the "financial inducement" is

"mild encouragement" as opposed to "economic dragooning," *National*

*Federation of Independent Business v. Sebelius*, 567 U.S. 519, 580-82 (2012), the

district court framed coercion not on the amount of funding at stake but on

the nature of the condition:  whether "federal funding [is] based on the

Government's assertion that a jurisdiction is a 'sanctuary' jurisdiction."

ER-14.  While Plaintiffs appear to focus on the amount of money at issue,

they are no more clear where to draw the line, suggesting that because any

restrictions on federal public benefits in compliance with PRWORA cover a

"broad swath" of benefits, Pls. Br. 26, they pose "a coercive gun to the

head," Pls. Br. 45, and that many discrete funding projects, *see* Pls. Br. 12

n.14, could be used as "a cudgel … to coerce localities," Pls. Br. 45,

including $9.5 million funding for a geothermal project, 3-SER-678, ¶ 21,

and $7.3 million for zoo construction costs, 3-SER-699, ¶ 10.a.  Because

36

nothing in the injunction provides a clear line separating permissible conditions from "coercive" ones, the injunction fails to define with any precise boundaries what is and is not prohibited by its terms. *See* Fed. R. Civ. P. 65(d)(1)(B)-(C).

In addition, as noted above (*supra* at 7), Plaintiffs (Pls. Br. 16-17, 20, 32, 56) and the district court (ER-12, ER-16) both *profess* that individual funding and termination decisions can continue notwithstanding the injunction. But that is precisely what FEMA and HUD have done, *see supra* at 12, 22 n.1, and yet those individualized decisions are covered by the express terms of the preliminary injunction, because they are "Government action," ER-14, that "condition funds … based on" the portions of the Executive Orders challenged in this case, ER-89-90. And even if those individual funding decisions were not based on the Executive Orders, they would still be "based on the Government's assertion that a jurisdiction is a

37

'sanctuary' jurisdiction," ER-14, and thus covered by the injunction for that reason.[2]

Plaintiffs do not contend otherwise or acknowledge that FEMA may proceed with grant-by-grant decisions or that HUD may go ahead with program-specific conditions on federal public benefits. The district court explained that to proceed with such funding conditions, the Government must "litigate its position," ER-12, to prove that its program-specific funding conditions are lawful. Until then, those individual funding decisions presumptively remain unlawful and subject to the express terms of the preliminary injunction. Thus, the district court effectively imposed a guilty-until-proven-innocent presumption and put the onus on the Government to prove otherwise, thereby creating a sort of pre-clearance review for individualized funding decisions. US Br. 82-84.

-----

[2] After Plaintiffs filed their answering brief, the district court enjoined HUD's Continuum of Care conditions based on Executive Order 14,218 and PRWORA. *See* D. Ct. Dkt. 225 (Aug. 22, 2025).

38

Plaintiffs argue that under the injunction *they* would need to bring separate challenges to individualized grant determinations, not the Government.  Pls. Br. 59.  The district court held the opposite:  "*[T]he Government* is entitled to identify particular grants and funding programs that *it* believes should be conditioned upon compliance with immigration-related objectives, and to litigate *its* position," and the injunction "does not reach the litigation *filed by the Government* against" sanctuary jurisdictions. ER-12 (emphases added).  By expanding its injunction beyond the Executive Orders and Bondi Directives to reach all manner of government action, including individualized funding decisions not challenged in this litigation, the district court abused its discretion.

## CONCLUSION

For the reasons stated above and in Appellants' Opening Brief, this

Court should vacate the district court's preliminary injunction.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

CRAIG H. MISSAKIAN
  *United States Attorney*

DANIEL TENNY
JOSHUA WALDMAN
  (202) 514-0236
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7527*
    *U.S. Department of Justice*
    *950 Pennsylvania Ave., N.W.*
    *Washington, D.C.  20530*

September 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Ninth Circuit Rule 32-1(b) because it contains 6,501 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Palatino Linotype 14-point font, a proportionally spaced typeface.

   /s/  Joshua Waldman

JOSHUA WALDMAN
*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, I caused the foregoing

Reply Brief for Appellants to be filed with the Court through the electronic

filing system.  Counsel for the appellees are registered CM/ECF users and

service will be accomplished by the appellate CM/ECF system.


  /s/  Joshua Waldman
JOSHUA WALDMAN
*Counsel for Appellants*